IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RADONNA MATCHETT,** **Plaintiff,** vs. **BSI FINANCIAL SERVICES,** **Defendants.** | **MEMORANDUM DECISION AND ORDER** Case No. 2:21-cv-211-DAK-CMR Judge Dale A. Kimball Magistrate Judge Cecilia M. Romero |

This matter is before the court on Defendant BSI Financial Services' Motion to Dismiss the First, Second, Third, and Fifth Causes of Action with Prejudice [ECF No. 7]. On July 20, 2021, the court held a hearing on the motion. At the hearing, Daniel M. Baczynski represented Plaintiff and Joshua A. Huber represented Defendant. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

In June 2008, Plaintiff Radonna Matchett obtained a mortgage loan memorialized by a Note and secured by a Deed of Trust. BSI is the mortgage servicer of the loan. Matchett alleges that BSI impermissibly charged her a convenience fee for loan payments that she made by telephone. By charging a fee for payment by telephone, Matchett contends that BSI violated the Utah Consumer Sales Practices Act ("UCSPA"), breached Matchett's mortgage loan documents, and was unjustly enriched. Matchett seeks statutory damages, actual and punitive damages, and declaratory and injunctive relief for herself and a proposed class of similarly situated individuals.

Six times between September 2017 and April 2018, Matchett tried to pay her mortgage

1

online but was unable to do so due to an alleged error on BSI's part. When Matchett was unable to make her payment online, she made her mortgage payments over the telephone, an alternate, fee-based payment option that BSI provides to its customers. Matchett's account statements provided her with five options for making payment: (1) mail, (2) online, (3) telephone, (4) ACH (automatic bank payment), or (5) Western Union. The account statement stated that as to payment by phone, "[a] fee may apply for this service." Matchett used the pay-by-phone option in September and December 2017, and January, February, March, and April 2018. BSI collected a $20 convenience fee from her in connection with each telephonic payment she made.

Although Matchett points out that the loan documents do not expressly authorize BSI to collect a convenience fee for such services, Paragraph 14 of the Deed of Trust states that "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee." In the case of excess loan charges, the Deed of Trust also provides that "[i]f the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceeds the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected by Lender which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing principal owed under the Note or refunded to Borrower."

Matchett also asserts that after the service of the Complaint, BSO began including additional fees on her monthly loan statements comprising attorneys' fees that BSI has incurred to defend this lawsuit. At the hearing on the motion to dismiss, the parties stated that they had settled claims relating to this conduct.

Matchett's Amended Complaint proposes two classes: (1) a Utah Class which "consist of (a) all individuals in Utah (b) against whom BSI (c) charged a convenience fee for accepting payment over the phone (d) where the underlying agreement did not specifically provide for said convenience fee and (e) where BSI charged the convenience fee between September 5th, 2014 and the present;" and (2) an Equitable Class which "consists of (a) all individuals in Utah (b) against whom BSI (c) charged a convenience fee for accepting payment over the phone (d) where the underlying agreement did not specifically provide for said convenience fee and (e) where BSI charged the convenience fee between September 5th, 2016 and the present."

## DISCUSSION

### Defendants' Motion to Dismiss

Defendant BSI Financial Services moves to dismiss the First, Second, Third, and Fifth Causes of Action in Matchett's Amended Complaint.

1. **UCSPA Claim**

BSI moves to dismiss Matchett's individual claims and proposed class action claims under the Utah Consumer Sales Practices Act ("UCSPA") asserted in the First Cause of Action.

   A. **Class Claims**

BSI asks the court to dismiss Matchett's class action claims that are brought under the UCSPA. Class actions claims are significantly limited under the UCSPA. The UCSPA permits a class action for damages only where the act or practice that is alleged to violate the UCSPA has been: "(1) Specified as violating the UCSPA by a substantive rule adopted by . . . the Utah Division of Consumer Protection; (2) Declared to violate Sections 4 or 5 of the UCSPA by a final judgment of the appropriate court . . . reported . . . 10 days before the consumer transactions on which the action is based; or (3) Was prohibited specifically by the terms of a consent judgment

which became final before the consumer transactions on which the action is based." Utah Code Ann. § 13-11-19(4)(a).

Unless one of the three situations is present, a consumer is not permitted to pursue a class action under the UCSPA for actual or statutory damages. *See Johnson v. Blendtec, Inc.*, No. 1:19-CV-83-JNP-DAO, 2020 WL 6710432, at *5 (D. Utah Nov. 16, 2020). Matchett argues that BSI had notice that its acts violated a list of deceptive acts provided in the text of the UCSPA itself as well as an administrative rule passed by the Utah Division of Consumer Protection. Under the UCSPA, Utah Code Annotated § 13-11-4(r), a supplier commits a deceptive act where it charges a consumer for a consumer transaction that has not previously been agreed to by the consumer. This is further explained in Utah Admin. Code 152-11-5, which identifies that failure to obtain the consumer's express authorization for any change orders, cost increases, or other amendments to the parties' contract.

Matchett's argument that the court should permit the class claims because BSI was on notice that its actions were unlawful under the UCSPA is not related to one of the three scenarios. The UCSPA is not a substantive rule adopted by the Utah Division of Consumer Protection, and thus BSI did not have the type of notice outlined in the UCSPA.

Matchett also points to Utah Admin Code R152-11-5 as a basis for her UCSPA class claims. That rule provides that "[i]t shall be a deceptive act or practice in connection with a consumer transaction involving repairs, inspections, or other similar services for a supplier to . . . (3) Fail to obtain the consumer's express authorization for any change orders, cost increases, or other amendments to the parties' contract." Utah Admin. Code R152-11-5(A)(1). This rule is wholly inapplicable to Matchett's class claims because this case does not involve "repairs, inspections, or other similar services," and Matchett does not allege that BSI improperly

4

implemented any change orders, cost increases, or amendments to the Deed of Trust without her authorization. At the hearing, Matchett alleged that her citation to Subsection (A) was a mistake and her claim was actually under Subsection (B). However, Subsection (B) suffers from the same problem that she does not allege that BSI improperly implemented any change orders, cost increases, or amendments to the Deed of Trust without her authorization. The Deed of Trust specifically does not prohibit the charging of fees for services. Matchett's claim that "Utah's debt collection and mortgage lending laws do not permit BSI to utilize methods and means of collection not permitted by law or the relationship governing the parties" and that BSI's "inflated charges far in excess of its actual costs is unfair or deceptive" do not relate to the administrative rule she cites. Accordingly, Matchett has not identified an administrative rule that prohibits the UCSPA violations alleged in her Amended Complaint.

Alternatively, Matchett claims that BSI could have been on notice by a final judgment obtained by the Division of Consumer Protection, but she has not yet explored the significant number of judgments granted. If the court determines that the statute and administrative code do not provide BSI with sufficient notice, Matchett asks the court to dismiss the class claims under the UCSPA without prejudice and allow her an opportunity to determine whether a prior judgment would satisfy the statute. However, the court notes that to bring the class claims in the first place, Matchett should have had a good faith basis for asserting them. Nonetheless, the court dismisses the class claims without prejudice to bringing an action in the future when Matchett may have a basis for such a claim. However, because there is no basis for such a claim at this time, the court does not grant Matchett leave to amend the present Amended Complaint in this action.

The court concludes that Matchett has not pled any such statutory authorization for her class claims because she does not allege that BSI's fee for the pay-by-phone option violates any

existing administrative rule, court order, or consent decree. Accordingly, Matchett's class action claims for damages under the UCSPA is dismissed without prejudice.

### B. Individual Claim -- Mortgage Servicing Conduct

BSI also argues that the UCSPA does not apply to Matchett's individual UCSPA claim because the UCSPA does not apply in the mortgage loan servicing context and a more specific statute applies to mortgage servicers. The UCSPA applies to "[a] deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code Ann. § 13-11-4. Multiple decisions in this District have repeatedly found that mortgage loans are not "consumer transactions" within the scope of the UCSPA, and loan servicers are not "suppliers." *See, e.g., Ayala v. Am. Home Mortg. Servicing, Inc.*, No. 2:11-CV-77-DB-PMW, 2011 WL 3319543, at *3 (D. Utah June 8, 2011). Matchett argues that these cases were wrongly decided. But Matchett has not meaningfully distinguished these holdings. Matchett's citation to the Uniform Act, its comments, and Kansas law are unpersuasive. The court agrees with the reasoning of the other courts in this District and is not convinced that it should take a different path on this issue. Matchett's position asks the court to ignore the clear language of the statute. Moreover, Matchett points to a case involving a residential lease, but a residential lease is not akin to a mortgage loan for purposes of determining whether the transaction is covered by the UCSPA. A mortgage loan, even though it involves land, is not a "sale, lease, . . . or other . . . transfer or disposition of goods, services, or other property." Thus, the court agrees with the court's holding that a mortgage is not a consumer transaction under the UCSPA.

In addition, BSI argues that Plaintiff does not have a claim under the UCSPA because Utah's Mortgage Lending and Servicing Act ("MLSA") specifically regulates mortgage loan servicing in Utah. In *Carlie v. Morgan*, 922 P.2d 1 (Utah 1996), the Utah Supreme Court held

that where the legislature has addressed the conduct at issue in a more specific statute, the UCSPA does not provide a remedy. *Id.* The Tenth Circuit has similarly held that a plaintiff seeking recourse from a mortgage loan servicer concerning allegedly improper fees has no remedy under the UCSPA because "[m]ortgage loan servicing is highly regulated under Utah statutory law." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1150 (10th Cir. 2013).

Matchett acknowledges that the Tenth Circuit held that the MLSA precludes mortgage-related claims pursuant to the UCSPA. However, Matchett contends that a specific section of the MLSA must govern the specific conduct at issue in order for the UCSPA claims to be preempted. Like Matchett, the plaintiff in *Berneike* complained about overcharges and improper fees on her mortgage loan account. 708 F.3d at 1144. However, Matchett incorrectly states that Berneike was precluded from pursuing her UCSPA claim because Utah Code Ann. § 70D-2-304 of the MLSA supposedly prohibited the defendant's specific alleged conduct. Section 70D-2-304 states that "[u]nless a servicer regularly provides the information described in this Subsection (1) in a monthly statement to a mortgagor, the servicer shall deliver to a mortgager, within 15 days after receipt of a written request, a statement of the mortgagor's account." This section had no relationship to Berneike's claims and allegations regarding wrongful overcharges and improper fees. The *Berneike* court only cited § 70D-2-304 as an example to illustrate that "[m]ortgage loan servicing is highly regulated under Utah statutory law," such that the MLSA governed mortgage servicing conduct in Utah rather than the UCSPA. *Id.* at 1150. The UCSPA does not apply when a more specific statutes does, such as the MLSA.

Even if the UCSPA applied, Matchett does allege a deceptive act. Matchett acknowledges that BSI disclosed the convenience fees to her before she used the pay-by-phone service. Despite the disclosure of the fee, Matchett argues that BSI's collection of the fees was deceptive and

7

unconscionable because she was left with no choice but to use the service. This argument does not appear in the Amended Complaint. Moreover, the court need not accept as true factual allegations that are contradicted by documents that can be considered in relation to the motion to dismiss. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("[F]actual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true."). As shown on the monthly account statements incorporated by reference into the Amended Complaint, Matchett had a fifteen-day grace period to submit payments each month before imposition of a late fee. The account statements also listed several different means for making the payments. Thus, the notion that she was forced to either incur the convenience fee for payment by phone or face a late fee is demonstrably incorrect. She could have mailed her payment during the grace period, scheduled an automatic bank payment, or tried the online portal again. Therefore, Matchett's claim that the fee was deceptive is not plausible.

      Matchett's statute of frauds argument is also unpersuasive. The Amended Complaint does not claim that BSI impermissibly amended or modified the Deed of Trust to require Matchett to make her mortgage payments by telephone and incur a fee. Matchett voluntarily used an optional service and was aware an additional fee was associated with using it before she chose to use it. There is nothing in the loan documents that prohibits Matchett from using an optional service and paying an optional, disclosed fee for that service. In fact, the loan documents specifically states that the absence of express authority in the deed to charge a specific fee is not a prohibition on the charging of such fee. There is no need to rewrite that language. Therefore, the statute of frauds is not implicated.

### 2. Unjust Enrichment Claim

BSI argues that Matchett's Second Cause of Action for unjust enrichment also fails as alleged in the Amended Complaint. Matchett's claim alleges that BSI was unjustly enriched by collecting fees for the payments Matchett made by telephone. Under Utah law, an unjust enrichment claim has three elements: "First, there must be a benefit conferred on one person by another . . . Second, the conferee must appreciate or have knowledge of the benefit . . . Finally, there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Desert Miriah, Inc. v. B&L Auto, Inc.*, 2000 UT 83, ¶ 12, 12 P.3d 580, 582.

Because unjust enrichment is a quasi-contractual theory, designed to provide an equitable remedy where one does not exist at law, the existence of an express contract covering the subject matter of the dispute precludes recovery under unjust enrichment. *Mann v. American W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation."); *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246 ("[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue.").

Although Matchett claims that no contract governs convenience fees where the underlying agreement does not provide for or address convenience fees, this allegation is belied by the other claims in the Amended Complaint. The Amended Complaint acknowledges the existence of an express contract governing the Loan and the lender-borrower relationship between Matchett and BSI. The Deed of Trust, an express contract between the parties, directly addresses loan fees and charges by stating that "the absence of express authority . . . to charge a specific fee to Borrower

9

shall not be construed as a prohibition on the charging of such fee." The Deed of Trust also provides Matchett with an express contractual remedy in the case of excess loan charges by stating that "[i]f the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceeds the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected by Lender which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing principal owed under the Note or refunded to Borrower." Because an express contract covers the subject matter of this litigation, Matchett's quasi-contractual unjust enrichment claim is dismissed.

### 3. Declaratory Judgment and Injunctive Relief Claim

During briefing, Matchett conceded to dismissal of this claim.

### 4. Breach of Contract Claim

BSI contends that Matchett's Fifth Cause of Action for breach of contract should be dismissed because the loan documents do not prohibit BSI from charging a fee for a service. Matchett claims that "[t]o the extent Defendant's conduct is governed by the mortgage agreement, Defendant breached the agreement by charging fees which are not allowed under the mortgage agreement."

However, the Loan Documents in no way prevent BSI from offering, or Matchet from accepting and using, optional payment services that are subject to a convenience fee. The Deed of Trust states that "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee." Because the Amended Complaint does not identify a single contractual provision of the loan documents, or any

other contract between Matchett and BSI, that prohibited BSI from charging the convenience fees for optional phone payment services, Matchett's breach of contract claim is not plausible. Therefore, the court dismisses Matchett's breach of contract claim.

### 5. Dismissal With Prejudice

BSI asks the court to dismiss the action with prejudice, arguing that Plaintiff has already had one opportunity to amend her Complaint and any further amendment would be futile. There is no basis in law for allowing Matchett to amend the UCSPA claim because the UCSPA does not apply in the mortgage servicing context. Matchet also cannot cure the deficiencies in her unjust enrichment claim because the Loan Documents exist and govern the relationship between the parties. The breach of contract claim also cannot be cured because the loan documents do not have a prohibition against charging fees for services. Therefore, with the exception of the UCSPA class claims, which the court has agreed to dismiss without prejudice, the court dismisses Matchett's other claims with prejudice.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss [ECF No. 27] is GRANTED without prejudice as to Matchett's UCSPA class action claims and with prejudice as to Matchett's individual UCSPA claims, unjust enrichment claim, and breach of contract claim.

DATED this 6th day of August, 2021.

BY THE COURT

_____
DALE A. KIMBALL
United States District Judge